UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RICHARD R. SAUER, | ) | CASE NO. C06-1437-TSZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| MICHAEL J. ASTRUE, Commissioner | ) | DISABILITY APPEAL |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Richard R. Sauer proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02       Plaintiff was born on XXXX, 1952.[1] He completed high school and college level training

03 as a lab optician.  Plaintiff previously worked as a construction site cleaner, landscaper, seafood

04 processor, video cassette shell loader, and optician.

05       Plaintiff filed his DI and SSI applications on October 21, 2003, alleging disability since

06 September 9, 2002.  (AR 56-58, 728-29.)  His applications were denied at the initial level and on

07 reconsideration, and he timely requested a hearing.  On February 14, 2006, ALJ Verrell Dethloff

08 held a hearing, taking testimony from plaintiff.  (AR 746-63.)  ALJ Dethloff issued a decision

09 finding plaintiff not disabled on May 22, 2006.  (AR 16-31.)

10       Plaintiff timely appealed.  The Appeals Council denied his request for review on September

11 20, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 8-10.) Plaintiff

12 appealed this final decision of the Commissioner to this Court.

13 **JURISDICTION**

14       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15 **DISCUSSION**

16       The Commissioner follows a five-step sequential evaluation process for determining

17 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

18 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

19 engaged in substantial gainful activity since his alleged onset date.  At step two, it must be

20 _____

21     [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the

22 General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's back

02  strain, status post remote lumbar back surgery in 1996, and affective disorder/depression severe.

03  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ

04  found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.  If

05  a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

06  functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

07  inability to perform past relevant work.  The ALJ assessed plaintiff's RFC and found him unable

08  to perform any past relevant work.  If a claimant demonstrates an inability to perform past relevant

09  work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains

10  the capacity to make an adjustment to work that exists in significant levels in the national

11  economy. Using the Medical-Vocational Guidelines as a framework at step five, the ALJ found

12  plaintiff capable of performing jobs existing in significant numbers in the national economy.

13          This Court's review of the ALJ's decision is limited to whether the decision is in

14  accordance with the law and the findings supported by substantial evidence in the record as a

15  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

16  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

17  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

18  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

19  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

20  2002).

21          Plaintiff argues that the ALJ failed to consider his somatic dysfunction or the findings of

22  examining physician Dr. William Coleman, erred in rejecting his treating physician's opinion

01  limiting him to sedentary work, failed to provide sufficient reasons for rejecting his testimony as

02  to the degree of his pain and limitations, and erred in the application of the Medical-Vocational

03  Guidelines at step five.  He seeks remand for an award of benefits or, alternatively, for further

04  administrative proceedings.  The Commissioner argues that the ALJ's decision is supported by

05  substantial evidence and should be affirmed.

06                                              Somatic Dysfunction

07          Plaintiff argues that the ALJ erred in failing to consider his somatic dysfunction at steps

08  two and beyond.  Somatoform disorders are mental disorders entailing "[p]hysical symptoms for

09  which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R.

10  Part 404, Subpart P, App. 1, § 12.07.

11          Plaintiff points out that his treating physician, Dr. Greg Sharp, repeatedly assessed him

12  with chronic pain from a lumbar back strain and noted he had somatic dysfunction related to his

13  pain.  (*See* AR 521-31, 639-43.)  He also points to a report from a physical therapist who noted

14  that "[h]is pain behaviors appear to stem from other than physical problems and are a bigger

15  roadblock at this time."  (AR 544.)  Plaintiff further notes the ALJ's reflection that "the record

16  suggests that at least some limitations in the claimant's activities and movements may be related

17  to anxiety and fear regarding his back."  (AR 25.)

18          Plaintiff argues that, despite this evidence, the ALJ failed to properly consider his somatic

19  dysfunction in evaluating his mental impairments, instead focusing only on his depression.  He

20  asserts that failure to assess the degree of limitation of each mental impairment in the four essential

21  areas of functioning is per se legal error requiring reversal.  *See Gutierrez v. Apfel*, 199 F.3d 1048,

22  1051 (9th Cir. 2000).  Plaintiff also points to the ALJ's duty to "develop evidence regarding the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 | possibility of a medically determinable mental impairment when the record contains information

02 | to suggest that such an impairment exists, and the individual alleges pain or other symptoms, but

03 | the medical signs and laboratory findings do not substantiate any physical impairment(s) capable

04 | of producing the pain or other symptoms." Social Security Ruling (SSR) 96-7p at n.3; *accord* 20

05 | C.F.R. § 404.1529. He avers that the ALJ's error with respect to his somatic dysfunction

06 | implicated not only the step two analysis, but subsequent steps, including the step three, credibility,

07 | and RFC assessments. With respect to step three, plaintiff argues that the ALJ erred in

08 | considering his mental and physical impairments separately, and in failing to properly consider the

09 | somatic component of his conditions. *See*, *e.g.*, *Lester v. Chater*, 81 F.3d 821, 829-30 (9th Cir.

10 | 1996) ("The claimant's illnesses 'must be considered in combination and must not be fragmentized

11 | in evaluating their effects.'"; "Pain merges into and becomes a part of the mental and psychological

12 | responses that produce the functional impairments. The components are not neatly separable.";

13 | finding ALJ erred in isolating the effects of the claimant's physical impairment from the effects of

14 | his mental impairment) (quoted sources omitted).

15 | The Commissioner does not respond to these arguments. Instead, he argues generally that

16 | the ALJ properly evaluated plaintiff's credibility and the medical evidence.

17 | At step two, a claimant must make a threshold showing that his medically determinable

18 | impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*,

19 | 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities"

20 | refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),

21 | 416.921(b).

22 | A claimant must prove the existence of a severe physical or mental impairment by

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's

02 own statement of symptoms alone will not suffice.   20 C.F.R. §§ 404.1508, 416.908.   "A

03 determination that an impairment(s) is not severe requires a careful evaluation of the medical

04 findings which describe the impairment(s) and an informed judgment about its (their) limiting

05 effects on the individual's physical and mental ability(ies) to perform basic work activities; thus,

06 an assessment of function is inherent in the medical evaluation process itself."   SSR 85-28.

07 　　　"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."

08 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54).   "An

09 impairment or combination of impairments can be found 'not severe' only if the evidence

10 establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability

11 to work.'"   *Id*. (quoting SSR 85-28). An ALJ is also required to consider the "combined effect"

12 of an individual's impairments in considering severity.   *Id*.

13 　　　There is no evidence Dr. Sharp, or any other medical provider, diagnosed plaintiff with a

14 somatoform disorder.   Dr. Sharp is an osteopathic physician and the records relied on by plaintiff

15 consist of  progress notes in which Dr. Sharp simply checked a box "yes" on the question of

16 whether plaintiff had any somatic dysfunction related to his back pain.   (*See* AR 521-31, 639-43.)

17 While these notes and the report from the physical therapist suggest the existence of some somatic

18 dysfunction, it cannot be said that – simply based on the existence of these documents –  plaintiff

19 met his step two burden of establishing a severe impairment significantly limiting his ability to

20 perform basic work activities.

21 　　　Nor does plaintiff demonstrate a step three error. The ALJ noted that he considered all of

22 the mental disorder listings at step three, which would include consideration of Somatoform

01  Disorders.  (*See* AR 22.)  *See also* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00.  Also, the

02  ALJ's decision otherwise reflects that he did not improperly isolate his consideration of plaintiff's

03  various impairments at this step. ( *See*, *e.g.*, AR 22 (mentioning one physician's concern

04  "regarding depression and pain"; stating: "Regarding activities of daily living, it appears that the

05  claimant's activities are primarily limited due to his back impairment and symptoms, although

06  depression may contribute to some diminished activities of daily living.")

07          Moreover, as acknowledged by plaintiff, the ALJ did consider the possibility of a somatic

08  component to plaintiff's impairments in assessing plaintiff's credibility, stating:

> Furthermore, the record suggests that at least some limitations in the claimant's
> activities and movements may be related to anxiety and fear regarding his back.  At
> the hearing, the claimant testified that he had been really scared about his back since
> his injury in September 2003, which was quite unexpected.  The documentary record
> also references the claimant's anxiety and fears about his back at times, and testing
> has suggested possible difficulty in the ability to accurately report pain.  A physical
> capacity evaluation in May 2004 was thought invalid due to self-limited activities.
> The evaluator noted that the claimant reported being very anxious when he had to
> perform work, and the claimant felt that one wrong move would cause him to ruin his
> back forever.  A high pain focus was noted, which significantly restricted his activities,
> and it was thought that the claimant lacked the confidence to perform work.
> Although some concern and caution regarding reinjury is understandable and
> appropriate, it appears that the claimant may have some self-imposed limitations
> related to his physical activities and movements beyond those resulting from his
> medically determinable impairments.

17  (AR 25 (internal citations to record omitted.))  This assessment supports the conclusion that the

18  ALJ appropriately considered the impact of any somatic dysfunction on plaintiff's condition.  In

19  fact, SSR 96-7p, pointed to by plaintiff, relates to the evaluation of symptoms in the credibility

20  assessment.  For this reason, and for the reasons described above, plaintiff fails to demonstrate

21  error at step two or beyond with respect to somatic dysfunction.

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01                          Findings of Dr. William Coleman

02          In a report dated October 3, 2003, Dr. William Coleman found plaintiff moderately limited

03   in several respects – including his ability to perform routine tasks, to relate to co-workers and

04   supervisors, to interact with the public, and to control his physical or motor movements and

05   maintain appropriate behavior – and markedly limited in his ability to respond appropriately to and

06   tolerate the pressures and expectations of a normal work setting.  (*See* Dkt. 17, Ex. A.)  Because

07   this evaluation is apparently not included in the record, plaintiff attached a copy to his opening

08   brief.  (*See id*.)  Plaintiff notes that the evaluation and the finding as to a marked limitation was

09   mentioned in the hearing (AR 762-63) and also attaches an August 1, 2005 letter from his former

10   counsel which he asserts demonstrates that the evidence was submitted to the ALJ (Dkt. 17, Ex.

11   A).

12          Plaintiff argues that the ALJ failed to consider this evaluation, resulting in errors at step

13   two and beyond.[2]  *See generally Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th

14   Cir. 1984) (although the Commissioner "need not discuss  *all* evidence presented . . . she must

15   explain why 'significant probative evidence has been rejected.'")  Plaintiff notes the absence of any

16   discussion of Dr. Coleman's opinions and avers that they should be credited as true.

17          Again, the Commissioner does not respond to plaintiff's arguments.

18          In general, more weight should be given to the opinion of a treating physician than to a

19   non-treating physician, and more weight to the opinion of an examining physician than to a non-

20   examining physician.  *Lester*, 81 F.3d at 830.  Where not contradicted by another physician, a

21   _____

22          [2] The argument pertinent to the application of the Medical-Vocational Guidelines at step
     five is discussed below.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  treating or examining physician's opinion may be rejected only for "'clear and convincing'"

02  reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where

03  contradicted, a treating or examining physician's opinion may not be rejected without "'specific

04  and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-

05  31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion of the

06  treating physician is contradicted, and the non-treating physician's opinion is based on independent

07  clinical findings that differ from those of the treating physician, the opinion of the non-treating

08  physician may itself constitute substantial evidence.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041

09  (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

10      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

11  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*.

12  *81 F.3d* at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

13  plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

14  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

15  the evidence supports a finding of disability.  *See, e.g.*, *Schneider v. Commissioner of Social Sec.*

16  *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

17  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

18  functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's

19  reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony

20  legally insufficient; finding record fully developed and disability finding clearly required).

21      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

22  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01   were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

02   by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

03   an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.

04   1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

05   error, in that some of his stated reasons for rejecting a physician's opinion were legally

06   insufficient).

07        In this case, the ALJ did not provide specific and legitimate reasons for rejecting the

08   opinions expressed in Dr. Coleman's October 3, 2003 report.  Because Dr. Coleman assessed

09   numerous moderate limitations and one marked limitation, this error supports remand.  However,

10   the Court notes that it is not clear whether Dr. Coleman's report was included in the record.

11   Plaintiff's former counsel did mention the report in his closing arguments in the hearing. (*See* AR

12   762-63.)  Yet, the letter from plaintiff's former counsel seeking the admission of additional

13   materials into the record simply references "enclosed medical records from the Department of

14   Social and Health Services [(DSHS),]" without any specific description of the records enclosed.

15   (*See* Dkt. 17, Ex. A.)  Because the record contains other materials from DSHS, dated in

16   September 2004 (*see* AR 494-99), it is not clear which documents were referred to in the August

17   1, 2005 letter from plaintiff's former counsel.[3]   The Commissioner's failure to address Dr.

18

19

20

---

21       [3] Plaintiff's former counsel also references Dr. Coleman's report in a letter to the Appeals
Council following the ALJ's decision. (    *See* AR 744-45.)   Interestingly, unlike the other

22   documents referenced in the letter, plaintiff cites no exhibit number in association with this report.
(*See id*.)  Nor is there any indication that he attached the report to the letter.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01 Coleman's report complicates the issue.[4]  However, given the ALJ's general duty to develop the

02 record, *see*, *e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and the fact that

03 plaintiff's counsel described Dr. Coleman's report in detail at the hearing, the undersigned

04 concludes that this matter should be remanded for further proceedings to allow the ALJ to address

05 this evidence.

06       At the same time, Dr. Coleman's opinions should not be credited as true.  Dr. Coleman

07 estimated the degree of impairment he assessed to last for a maximum of 26 weeks.  (*See* Dkt. 17,

08 Ex. A at 4.)  In order to be found disabled, a claimant must be unable to work as a result of an

09 impairment "which can be expected to result in death or which has lasted or can be expected to

10 last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505, 416.905.  Also,

11 considering the record and the ALJ's decision as a whole, an award of benefits based simply on

12 the failure to address this single report is not warranted.

13                                         Other Physicians' Opinions

14       Plaintiff also argues that the ALJ failed to provide sufficient reasons for rejecting the

15 opinions of his treating physician Dr. Sharp.  He points in particular to Dr. Sharp's opinion that

16 he was limited to sedentary work and asserts error in the ALJ's conclusion that he could perform

17 light work.  Plaintiff maintains the consistency of Dr. Sharp's opinions with those of treating

18 physicians Dr. Kin Lui and Dr. Tracy Ouellette.

19       In assessing plaintiff's RFC, the ALJ discussed the medical opinions as to plaintiff's

20 physical condition as follows:

21  _____

22       [4] The Commissioner is reminded in future filings to respond to all of the issues raised by
a plaintiff.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

Generally, the medical opinions support a conclusion that the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, which is consistent with light exertional work. However, differences are noted in opinions regarding the claimant's ability to stand, walk, and sit. I find the medical opinions of record that are not consistent with work at a light exertional level are unsupported by objective medical evidence, including MRI and physical examination and the record as a whole, including the claimant's somewhat self-limited activities.

In appears that Dr. Andrews evaluated the claimant just prior to his September 2003 injury and concluded that he could perform light exertional work. The state agency medical consultants reviewed the record in February 2004 and found insufficient evidence prior to September 2003. However, as of such date, the medical consultant opined that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight hour workday; and sit with normal breaks for about six hours in an eight hour workday.

In June 2004, Dr. Ouellette opined that the claimant could sit for six hours, stand for about four hours, and walk for about four hours in an eight hour day and could gradually increase to full-time work within one to two months. It also is noted that Dr. Ouellette approved the claimant to work as a landscape laborer if lifting were limited to twenty-five pounds. Such work involves frequent standing and walking. As noted, any limitations to less than light work are a matter of deconditioning, apparently, and are, moreover, unsupported by significant objective evidence of back impairment.

Dr. Sharp opined that the claimant could sit for two hours, stand for four hours, and walk for four hours total in an eight hour day, with no bending, kneeling, crouching, balancing, or crawling. It is noted that his opinion was offered December 8, 2004, which was within weeks after he began treating the claimant. Dr. Sharp he [stet] did not provide explanation for the limitations he noted regarding sitting, standing, walking, and bending, and his treatment notes for December 2004 reflect the claimant's report of pain generally at a level of 3/10. Dr. Sharp's treatment notes at that time do not support or explain the severity of the limitations he noted related to standing and walking, and the limitations are not supported by the physical examination findings or objective evidence of record. In addition, the treatment records indicate that the claimant's back range of motion was improving with therapy and, at times, was noted as full.

In May 2005, Dr. Sharp released the claimant to work as a microcomputer support specialist, work that involves standing up to three hours, walking up to three hours, and sitting up to six hours in a day, with occasional lifting of twenty pounds and maximum lifting of up to fifty pounds. It appears that the claimant successfully began a training program for such work and reported no problems until he was transferred

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

to a community college program, and then his reported problems seemed to relate primarily to the complexity of the information and the size of the campus rather than the actual work duties.  Dr. Sharp has now approved the claimant for work as an administrative assistant, which involves occasional standing and frequent sitting.  Dr. Sharp's opinions that limit the claimant to less than light exertional work appear to be based, in large part, on the claimant's subjective reports, which as discussed above may not always have been an accurate reflection of his physical abilities; as noted there is insufficient objective evidence to support less than light level limitations.

The undersigned concurs with the opinions of the state agency medical consultants, which is generally consistent with the longitudinal treatment records, the objective medical evidence, and the general opinion of Dr. Ouellette.  Although the claimant's back condition status post remote lumbar surgery and his injury in September 2003 preclude his return to heavy work, the claimant was able to perform light exertional work prior to his September 2003 injury and return to light exertional work well-within a year after his injury.  Furthermore, he has been able to continue working at such level since that time.

(AR 25-27 (internal citations to record omitted.))  The ALJ subsequently found plaintiff capable of the following:

[T]he claimant is able to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight hour workday; and sit with normal breaks for a total of about six hours in an eight hour workday, with pushing and pulling within these parameters.  Kneeling, crouching, stooping, and crawling may be reasonably limited to occasional, which I note do not significantly erode the universe of light work.  SSR 85-14 and 85-15.  In addition, the claimant is limited to simple work.

(AR 27-28.)

Plaintiff rejects the contention that Dr. Sharp lacked objective medical evidence to support his opinions, pointing to various findings in the record.  ( *See* 507-12, 521-31, 639-43.)  He likewise points to evidence from Drs. Liu and Ouellette as to his limitations and inability to return to work.  (*See, e.g.*, AR 492, 574 (Dr. Liu stated in June 2004: "Because of his waxing and waning back pain and the need for continuous physical therapy, he is not medically stable yet to consider vocational rehabilitation training at this time.") and AR 627 (Dr. Ouellette found in June

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01   2004 that plaintiff was limited to, *inter alia*, standing "30-45%" and walking "35-50%.")) Plaintiff

02   further posits that the ALJ failed to consider all of his nonexertional limitations in the RFC

03   assessment, pointing to evidence from his treating physicians supporting limitations in balancing,

04   working around heights, hazards, or uneven work surfaces, reaching from floor to waist level, and

05   alternating sitting and standing at will.

06        The Commissioner argues that the ALJ properly evaluated the medical evidence.  He

07   points to evidence in the record supporting the ALJ's decision.

08        The ALJ did not state that Dr. Sharp lacked any objective medical evidence to support his

09   opinions.  Instead, he cited specific instances in which he felt Dr. Sharp's opinions were not

10   supported by objective findings, and explained that "Dr. Sharp's opinions that limit the claimant

11   to less than exertional work appear to be based, *in large part* , on the claimant's subjective

12   reports."  (AR 26 (emphasis added.))  Plaintiff does not demonstrate that the ALJ's interpretation

13   of Dr. Sharp's records was not rational.  Instead, the ALJ provided specific and legitimate reasons

14   for rejecting Dr. Sharp's opinion that plaintiff could perform only sedentary work.

15        Nor does plaintiff demonstrate any error with respect to Dr. Liu or Dr. Ouellette.  As with

16   Dr. Sharp, the ALJ provided sufficient reasons for rejecting Dr. Ouellette's opinions to the extent

17   they supported a limitation to less than light work.  Also, although the ALJ did not specifically

18   address Dr. Liu's opinions in the RFC portion of the decision, he did indicate that he considered

19   the report pointed to by plaintiff here in determining plaintiff's RFC.  (*See* AR 25 (citing exhibit

20   "30F/9" which corresponds to AR 492 and 574 – Dr. Liu's June 2004 assessment.))  Plaintiff does

21   not demonstrate that the ALJ erred in considering this report, or any other evidence from Dr. Liu.

22   (*See* AR 19-21 (discussing evidence from Dr. Liu.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01     Finally, plaintiff does not demonstrate that the ALJ otherwise erred in failing to adopt

02  various other limitations assessed by these physicians.  As stated above, the ALJ sufficiently

03  assessed the opinions of plaintiff's treating physicians in determining plaintiff's RFC.

04                                          Credibility

05     Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

06  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

07  *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

08  ALJ must render a credibility determination with sufficiently specific findings, supported by

09  substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

10  testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

11  F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

12  conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

13  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

14  ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

15  his testimony and his conduct, his daily activities, his work record, and testimony from physicians

16  and third parties concerning the nature, severity, and effect of the symptoms of which he

17  complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

18     In this case, the ALJ assessed plaintiff's credibility as follows:

19     After considering the evidence of record, the undersigned finds that the claimant's
        medically determinable impairments could reasonably be expected to produce some
20     symptoms, but the claimant's statements concerning the intensity, duration and
        limiting effects of his symptoms are not fully credited.

21
        The claimant's assertion of disability is not supported by the objective medical
22     evidence.  Although muscle spasms and diminished range of motion have been found

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

at examinations, the claimant's strength, sensation, and gait have been generally normal. Also, full range of motion has been noted at times. In addition, straight leg raising has been negative for radicular pain, and an MRI in November 2003 showed evidence of only "mild" bilateral foraminal stenosis at L5-S1, but no nerve or spinal cord impingement. Although the objective evidence establishes a low back impairment, it does not support the severity of the claimant's reported symptoms and limitations. Compare,Lombardo v. Schweiker, 749 F.2d 565, 567 (9 Cir. 1984), (*per curiam*) (absence of major neurologic abnormality such as disc herniation or nerve root compression supportive of nondisabling nature of back impairment).

Furthermore, the level of medical care provided is not consistent with disabling or severe pain. The claimant does not take any medication for pain, other than anti-depressant medication, and even without medication, the treatment records indicate reports of generally mild to moderate symptoms.

In addition, the claimant's reports of symptoms in the medical records are not consistent with the severity of some of the alleged ongoing limitations. After an initial period of recovery, treatment records generally reflect reports of ongoing pain ranging at mild to moderate levels of 3-5/10. In addition, the claimant initially reported aggravation of his pain with activities such as bending, lifting, and prolonged sitting, standing, and walking. Subsequently, he continued to participate in physical therapy, and in May 2004, he did not include prolonged sitting, standing, and walking as aggravating factors. Furthermore, during the relevant period, the claimant has reported an ability to do a lot of walking and to ride a bike frequently. He also lived for a long time in his car or van, carrying food from food banks. In January 2004, the claimant could walk for thirty minutes continuously without difficulty; in February 2004 he could lift and carry at least thirty pounds; and in May 2004, he was able to work on his feet continuously for eighty minutes. Also, it is noted that the claimant was digging a large hole in July 2004, and in September 2004, he was under his car doing repairs. The claimant's reported symptoms and activities indicate some ongoing limitations in functioning, particularly related to lifting and carrying heavy objects, but they do not indicate ongoing significant limitations related to standing, walking, and sitting, particularly with regular physical therapy and consistent exercise/activity within his functional capacity.

Furthermore, the record suggests that at least some limitations in the claimant's activities and movements may be related to anxiety and fear regarding his back. At the hearing, the claimant testified that he had been really scared about his back since his injury in September 2003, which was quite unexpected. The documentary record also references the claimant's anxiety and fears about his back at times, and testing has suggested possible difficulty in the ability to accurately report pain. A physical capacity evaluation in May 2004 was thought invalid due to self-limited activities. The evaluator noted that the claimant reported being very anxious when he had to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01    perform work, and the claimant felt that one wrong move would cause him to ruin his
      back forever.  A high pain focus was noted, which significantly restricted his activities,
02    and it was thought that the claimant lacked the confidence to perform work.
      Although some concern and caution regarding reinjury is understandable and
03    appropriate, it appears that the claimant may have some self-imposed limitations
      related to his physical activities and movements beyond those resulting from his
04    medically determinable impairments.

05    The claimant has reported little improvement of his back condition, and the claimant
      testified that he is very tired and exhausted after household chores and rests most of
06    the day.  However, physical therapy and osteopathic treatment notes generally reflect
      continued steady improvement over time.  The evidence also suggests that the
07    claimant's ability to perform work activities is affected to some extent by general
      deconditioning, which is not a medically determinable impairment.  See, Social
08    Security Ruling 96-8p, and, compare, Osenbrock v. Apfel, 240 F.3d 1157, 1165, 1167
      (9 Cir. 2000).  Whole body conditioning and increased aerobic activity have been
09    recommended, and the longitudinal record reflects improvement of the claimant's
      range of motion and reported symptoms, particularly with regular therapy, exercises,
10    and activity within his functional capacity.  However, there is some suggestion that
      the claimant did not always exercise regularly or fully comply with treatment, and
11    living in a car/van was noted as an obstacle to treatment.

12    (AR 24-25 (internal citations to record omitted.))

13        Plaintiff argues that the ALJ improperly required him to produce objective evidence to

14    support the degree of his limitations.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)

15    ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an

16    adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective

17    medical evidence to fully corroborate the alleged severity of pain.")  He asserts the ALJ's failure

18    to properly credit the limitations resulting from his somatic dysfunction and to properly consider

19    the combined effect of his physical and mental impairments.  He also rejects the ALJ's reliance on

20    his activities as inconsistent with his testimony, noting that the ability to perform basic daily

21    activities does not refute a claim of disability.  *See*, *e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1049-

22    50 (9th Cir. 2001) ("With respect to daily activities, this court has held that if a claimant 'is able

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01  to spend a substantial part of [her] day engaged in pursuits involving the performance of physical

02  functions that are transferable to a work setting, a specific finding as to this fact may be sufficient

03  to discredit a claimant's allegations.'"; "This court has repeatedly asserted that the mere fact that

04  a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

05  walking for exercise, does not in any way detract from her credibility as to her overall disability.

06  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Morgan v.*

07  *Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) and *Fair v. Bowen*, 885

08  F.2d 597, 603 (9th Cir. 1989)).  He requests that his testimony be credited as a matter of law.

09  *See*, *e.g.*, *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony

10  were credited as true, plaintiff's condition met a listing).

11         However, as argued by the Commissioner, the ALJ provided clear and convincing reasons

12  for finding plaintiff not fully credible.  The ALJ did not reject plaintiff's complaints based solely

13  on a lack of supporting objective medical evidence.  Instead, he found that, while the evidence

14  supported the existence of some limitations, it did not support the degree of impairment alleged.

15  The ALJ also considered the inconsistency between the severity of the impairment alleged and the

16  medical care/medication taken, as well as the reports of symptoms in the medical records,  the

17  inconsistency between plaintiff's reported activities and the severity of impairment alleged, the

18  somatic component of plaintiff's complaints, and the impact of general deconditioning on his

19  condition.  Additionally, the ALJ's step four decision as a whole reflects consideration of the

20  combined effect of plaintiff's impairments.  ( *See* AR 23-28.)  For these reasons, the ALJ's

21  credibility assessment should be upheld.

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01                                        Step Five

02        An ALJ may rely on the Medical-Vocational Guidelines ("guidelines" or "grid") to meet

03   his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be

04   used, however, 'only when the grids accurately and completely describe the claimant's abilities and

05   limitations.'"  *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).  "When a

06   claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range

07   of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the

08   testimony of a vocational expert is required.   *Id.* (quoting *Desrosiers v. Secretary of Health &*

09   *Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)).   *Accord Tackett v. Apfel*, 180 F.3d 1094,

10   1103-04 (9th Cir. 1999) ("Because Tackett's non-exertional limitations 'significantly limit the

11   range of work' he can perform, mechanical application of the grids was inappropriate.")

12         "[T]he fact that a non-exertional limitation is alleged does not automatically preclude

13   application of the grids. The ALJ should first determine if a claimant's non-exertional limitations

14   significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d

15   at 577 ("It is not necessary to permit a claimant to circumvent the guidelines simply by alleging

16   the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that

17   such impairment exists. To do so frustrates the purpose of the guidelines.")   "Nonexertional

18   impairments may or may not significantly narrow the range of work a person can do." SSR 83-14.

19   *See also Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations do not,

20   however, preclude the use of the grids when a nonexertional limitation is alleged. They explicitly

21   provide for the evaluation of claimants asserting both exertional and nonexertional limitations. [20

22   C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e).  The Appeals Council found that the claimed

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01  nonexertional limitations did not so affect Razey's residual capacity that the use of the grids was

02  inappropriate. Both the Secretary's regulation and our decision in *Odle v. Heckler*, 707 F.2d 439,

03  440 (9th Cir. 1983), allow the use of the grids under these circumstances."), *modified* at 794 F.2d

04  1348 (1986).

05       Plaintiff argues that Dr. Coleman's findings of a moderate limitation in his ability to relate

06  to co-workers and supervisors and a marked limitation in his ability to respond appropriately to

07  and tolerate the pressures and expectations of a normal work setting precluded reliance on the

08  grids. *See* SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work

09  include the abilities (on a sustained basis) to understand, carry out, and remember simple

10  instructions; to respond appropriately to supervision, coworkers, and usual work situations; and

11  to deal with changes in a routine work setting. A substantial loss of ability to meet any of these

12  basic work-related activities would severely limit the potential occupational base. This, in turn,

13  would justify a finding of disability because even favorable age, education, or work experience will

14  not offset such a severely limited occupational base.") He also points to the various nonexertional

15  mental and postural limitations he maintains the ALJ erroneously failed to include in the RFC

16  assessment as likewise precluding reliance on the grids.  Finally, plaintiff maintains that the ALJ's

17  step five finding is per se erroneous based on the ALJ's failure to cite a specific rule in support of

18  his finding.  *See* SSR 83-11 ("A disability decision of 'Disabled' or 'Not disabled' based on a

19  numbered rule being met must specify the rule in Appendix 2 which directs that particular

20  decision.")

21       The Commissioner argues that, because the ALJ found plaintiff's non-exertional limitations

22  of limited significance, he properly applied the grids as a framework for decision-making to resolve

01   this case. (*See* AR 28-31.)

02       In considering the existence of nonexertional limitations, the ALJ pointed to his finding

03   that plaintiff had moderate limitations in concentration, persistence, and pace. (AR 29.) He

04   concluded that these limitations did not significantly affect plaintiff's ability to perform the

05   universe of unskilled, light work, and, therefore, did not significantly limit the range of work

06   contemplated by the grids. (*Id*.) In reaching this conclusion, the ALJ relied on SSR 85-15 and,

07   in fact, quoted language from this SSR cited by plaintiff: "The basic mental demands of

08   competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand,

09   carry out, and remember simple instructions; to respond appropriately to supervision, coworkers,

10   and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. He

11   stated that, while this SSR "applies to solely non-exertional impairments, 'the considerations of

12   mental functioning that relate to individuals with mental impairments alone would also be relevant

13   to individuals suffering from exertional impairments as well as severe mental impairments.'" (AR

14   30 (quoting *Franklin v. Apfel*, 8 F. Supp. 2d 227, 233 (W.D.N.Y. 1998).) Finding plaintiff

15   capable of performing substantially all unskilled light and sedentary work activites, the ALJ found

16   "that his occupational base for light <u>unskilled</u> work, <u>i.e.</u>, the universe of which the Guidelines take

17   administrative notice, <u>has not been significantly eroded</u> by his nonexertional limitations[,]" and,

18   therefore, that reference to the guidelines was permissible. (AR 30-31.) He pointed to guideline

19   rule 202.14 as providing a framework for finding plaintiff not disabled. (AR 31.) *See* 20 C.F.R.

20   § 404, Subpt. P, App. 2, Rule 202.14 (directing a finding of "not disabled" for an individual limited

21   to light work, closely approaching advanced age, with a high school degree or more, and with

22   previous "[s]killed or semiskilled – skills not transferable" work).

01      Plaintiff's latter two arguments lack merit.  As noted above, the ALJ appropriately

02  assessed plaintiff's RFC.  Also, he pointed to a specific guideline rule – 202.14 – in finding plaintiff

03  disabled.  Plaintiff argues the inapplicability of this rule based on his assertion that he was limited

04  to sedentary work.  *See* 20 C.F.R. § 404, Subpt. P, App. 2, Rule 201.14 (directing a finding of

05  "disabled" for an individual limited to sedentary work, closely approaching advanced age, with a

06  high school degree or more, and with previous "[s]killed or semiskilled – skills not transferable"

07  work).  However, as discussed above, the ALJ provided sufficient reasons for rejecting evidence

08  supporting a limitation to sedentary work.

09      Plaintiff's first argument, however, argues in favor of further proceedings.  That is, as

10  asserted by plaintiff, Dr. Coleman assessed nonexertional limitations one or more of which may

11  be deemed significant. (*See* Dkt. 17, Ex. A (finding plaintiff moderately limited in his ability to

12  perform routine tasks, to relate to co-workers and supervisors, to interact with the public, and to

13  control his physical or motor movements and maintain appropriate behavior – and markedly

14  limited in his ability to respond appropriately to and tolerate the pressures and expectations of a

15  normal work setting)) and *see* SSR 85-15 (a substantial loss in "the abilities (on a sustained basis)

16  to understand, carry out, and remember simple instructions; to respond appropriately to

17  supervision, coworkers, and usual work situations; and to deal with changes in a routine work

18  setting[] . . .  would severely limit the potential occupational base[] . . . and justify a finding of

19  disability[.]")

20      The undersigned also noticed another potential problem with the ALJ's step five decision.

21  The Ninth Circuit has held that SSR 85-15 "provides guidance only for cases in which the claimant

22  asserts 'solely non-exertional impairments.'" *Roberts v. Shalala*, 66 F.3d 179, 193 (9th Cir. 1995)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01  (quoting SSR 85-15); *accord Sandgathe v. Chater*, 108 F.3d 978, 981 (9th Cir. 1996) (finding

02  SSR 85-15 did not apply given the existence of exertional limitations).  The non-binding district

03  court decision cited by the ALJ in his decision as holding otherwise criticized the Ninth Circuit's

04  position. *See Franklin*, 8 F. Supp. 2d at 233.  Yet, despite the existence of exertional impairments

05  in this case, the ALJ made no effort to distinguish the Ninth Circuit law and relied significantly on

06  SSR 85-15 in reaching his decision at step five.  The parties did not address this potential issue and

07  it is not clear whether the utilization of a different SSR, one relating to both exertional and

08  nonexertional limitations, would lead to the same or a different result.  The ALJ should, therefore,

09  also address this issue on remand.

10                                                **CONCLUSION**

11           For the reasons set forth above, this matter should be REMANDED for further

12  administrative proceedings.

13           DATED this <u>12th</u> day of June, 2007.

14

15                                                          _____
                                                            Mary Alice Theiler
16                                                          United States Magistrate Judge

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -23